Filed 2/27/24  P. v. Martinez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GERSON MARTINEZ,<br><br>    Defendant and Appellant. | F086212<br><br>(Super. Ct. No. VCF025807A-87)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Jennifer Mouzis, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P. J., Detjen, J. and Smith, J.

# INTRODUCTION

In 1988, appellant and defendant Gerson Martinez (defendant) was convicted after a jury trial of second degree murder and sentenced to 15 years to life. The judgment was affirmed on direct appeal.

In 2023, the trial court denied defendant's Penal Code section 1172.6[1] petition for resentencing and found he failed to make a prima facie case for relief.

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 and *People v. Wende* (1979) 25 Cal.3d 436. Defendant submitted a letter brief in response. We review his arguments and affirm the trial court's denial of his petition.[2]

---

[1] All further statutory citations are to the Penal Code.

Defendant filed a preprinted form as his petition for resentencing that refers to former section 1170.95. The statute was substantively amended, effective on January 1, 2022, and renumbered as section 1172.6 without further change on June 30, 2022. (*People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.) As such, we refer to the subject statute by its current number throughout this opinion.

[2] During the pendency of this appeal, this court ordered the superior court to augment the instant record with the entirety of the record from defendant's 1988 jury trial. The superior court clerk filed an augmented clerk's transcript that contained the jury instructions; the court reporter filed a declaration that the notes for the trial transcript no longer existed. Thereafter, this court filed an order for the parties in this appeal to meet and confer to determine if they could obtain the reporter's transcript from defendant's 1988 jury trial, and/or the nonpublished opinion in *People v. Martinez* (Jan. 31, 1990, F010485) (*Martinez*), that affirmed the judgment on direct appeal, and to augment the record with such documents. Without objection from the People, appellate counsel filed both the reporter's transcript from defendant's jury trial and this court's prior opinion as an augmentation to the appellate record.

# FACTS[3]

"Jesús Sanchez (Sanchez) lived in a home with five other men. He was in charge of collecting the rent. Defendant spent three or four days at this home, sleeping on the couch, prior to November 25, 1987, the night when the homicide occurred.

"During the early evening of November 25, 1987, Sanchez arrived home with his friend Faustino Quesada, who was commonly known as 'El Tigre [(El Tigre)].' El Tigre did not live in the home. El Tigre and Sanchez were drinking. El Tigre was sitting on the couch. Defendant was present in the room, as were some of the other residents. As the evening wore on, defendant eventually asked El Tigre to move because he wanted to go to sleep on the couch. Defendant and Sanchez then got into a discussion as to how long defendant was given permission to stay in the home. Sanchez then told defendant to leave. He replied he would. El Tigre joined the discussion, telling defendant to leave now or he would be forced to leave. Sanchez reiterated to defendant that the best thing to do was to leave.

"In the meantime, El Tigre went outside and returned with a rifle. El Tigre aimed the rifle at defendant and told him to get out. Showing El Tigre that he was unarmed, defendant advised him to go ahead and fire. Things calmed down and defendant said he

---

**3**    The following factual statement is taken from this court's nonpublished opinion in *Martinez*, *supra*, F010485, which affirmed the judgment on direct appeal.

In reviewing a section 1172.6 petition, the court may rely on "the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3); *People v. Clements* (2022) 75 Cal.App.5th 276, 292; *People v. Cooper* (2022) 77 Cal.App.5th 393, 406, fn. 9.) The role of the appellate opinion is limited, however, and the court may not rely on factual summaries contained in prior appellate decisions or engage in fact finding at the prima facie stage. (*Clements* at p. 292; *People v. Lewis* (2021) 11 Cal.5th 952, 972.) We recite the factual statement from the prior appeal to place defendant's arguments in context, and will not rely on these facts to resolve his appeal from the trial court's order that found his petition did not state a prima facie case for relief.

was going to get a ride and return to pick up his belongings. El Tigre leaned the weapon against the wall. Defendant left.

"Defendant went to the home of Meynardo Artisco, Sanchez's cousin, and asked him for a ride to get his belongings. Artisco said he was too drunk to drive but that he would go along and let defendant use the car if defendant drove. They drove to Sanchez's house where defendant armed himself with a rifle that was in Artisco's trunk.

"Defendant walked in the house with the weapon. He told El Tigre, 'we are now even.' Defendant challenged El Tigre to get his gun, and they could kill each other if El Tigre wanted to. El Tigre didn't say much, and defendant questioned whether he was 'lacking in guts.' El Tigre replied he was not afraid. Sanchez said, 'Leave him to me,' picked up the gun, and stood up. Sanchez cocked the gun. Defendant put his foot up to move Sanchez's weapon to the side. Shots were fired. El Tigre testified that defendant aimed the rifle and fired, but El Tigre did not see the shooting.

"Sanchez died from seven gunshot wounds to his chest and head. There was a gunshot hole in the television which was fired by Sanchez.

"The day following the shooting, Pedro and Victor Guiterrez, the victim's cousins, saw defendant. Defendant told them he did not go to the house to kill Sanchez; he was there on account of El Tigre. The Guiterrezes interpreted this to mean that he went to the house to kill El Tigre. Defendant turned himself in to the police after his conversation with the Guiterrezes."

**Defense Evidence**

"Meynardo Artisco testified that Sanchez fired first. Defendant testified that when he arrived back at the Sanchez house he opened the trunk of the car so he could put his belongings in after he removed them from the house. He saw the rifle in the trunk. He was afraid because El Tigre had threatened him and he had heard that El Tigre had shot at people before. He felt he needed something to be secure, and he took the gun with him.

4

"Defendant went in the house and told El Tigre he had come for his things and he did not want any problems. He told El Tigre, 'if you want to kill me, pick up your weapon.' Defendant testified he did not want to harm anyone; he only wanted to defend himself and fired the weapon out of fright only after Sanchez fired. He did not point the weapon at anyone when he went in."

## PROCEDURAL BACKGROUND

On February 18, 1988, an information was filed in the Superior Court of Tulare County charging defendant with count 1, murder of Sanchez (§ 187) with the enhancement that defendant personally used a firearm, a rifle (§ 12022.5).

On April 25, 1988, defendant's jury trial began. On April 29, 1988, the trial court granted a partial acquittal only as to the charge of first degree murder.

**The Jury Instructions and Verdict**

On May 2, 1988, the trial court instructed the jury. As to count 1, murder, the jury was instructed on the elements of murder, and express and implied malice (CALJIC Nos. 8.10, 8.11); second degree murder based on an unlawful killing with malice aforethought but without evidence of deliberation and premeditation (CALJIC No. 8.30); and second degree murder based on implied malice (CALJIC No. 8.31).

The jury was instructed on self-defense, and the lesser included offenses of voluntary manslaughter based on a sudden quarrel or heat of passion, and involuntary manslaughter.

The jury was instructed on transferred intent:

"Where one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed.

"If you find that defendant attempted to kill a certain person but instead killed a second person who came to the defense of the person sought to be killed, the crime, if any, so committed is the same as though the person originally intended to be killed had in fact been killed.

5

"This instruction only applies if you find that the killing did in fact occur as a direct result of the second person's attempt to defend the person originally sought to be killed. If a killing arose out of a subsequent or unrelated dispute or incident between the defendant and the person actually killed, you must assess the crime, if any, strictly on its own.

"An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.…" (CALJIC Nos. 8.65, 6.00, and special instruction.)

The jury was not instructed on the felony-murder rule, the natural and probable consequences doctrine, or any imputed malice theory.

## Verdict and Sentencing

On May 2, 1988, the jury found defendant guilty of second degree murder and the firearm enhancement true.

On May 31, 1988, the trial court denied defendant's postverdict motions and sentenced him to 15 years to life for second degree murder plus two years for the firearm enhancement.

## Direct Appeal

On January 31, 1990, this court filed the nonpublished opinion that affirmed the judgment on direct appeal. (*Martinez*, *supra*, F010485.) We held the trial court properly overruled defendant's objections to giving the transferred intent instructions:

"[T]ransferred intent has been applied to cases similar to the case here where the killing resulted from the unintended victim's coming to the aid of the intended victim. Fairness is served by this result. Just as a defendant should not go free because he has a bad aim or inadvertently kills another, neither should he go free when his intended victim is not killed because another has unexpectedly decided to come to the intended victim's aid. If it is believed that defendant entered with an intent to kill El Tigre, the murder of Sanchez resulted because defendant entered with this malicious intent. It is not unfair to hold him culpable for the greatest crime he sought to commit without regard to which victim died. The concept of transferred intent applies to this case."

6

We further held the transferred intent instructions correctly stated the relevant law, because the language "clearly requires that defendant must have intended to kill El Tigre before the intent could be transferred. This intent to kill is express malice." "The instructions given properly conveyed the principle that defendant had to harbor express malice toward El Tigre before transferred intent could apply."

## DEFENDANT'S PETITION FOR RESENTENCING

On November 21, 2022, defendant filed a petition for resentencing pursuant to section 1172.6 and requested appointment of counsel. He filed a supporting declaration that consisted of a preprinted form where he checked boxes that he was eligible for resentencing because he was convicted of murder, attempted murder, or manslaughter following a trial, and he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. The trial court appointed counsel.

### The People's Opposition

On February 8, 2023, the People filed opposition and argued defendant was ineligible for relief because he was convicted as the sole perpetrator who killed the victim, and the jury found he personally and intentionally used a firearm in the commission of the murder.

### Defendant's Reply

Defendant's counsel filed a reply supported by excerpts from the jury instructions. Counsel argued the jury was instructed it could convict defendant of second degree murder if it found that Sanchez was killed during an attempt to commit another crime— the attempted murder of El Tigre. Defendant argued he was thus convicted under the felony-murder rule, which was eliminated by the amendments to sections 188 and 189, and an evidentiary hearing should be held.

7

Defendant further argued that he was still eligible for resentencing even if he was the actual shooter because there was nothing in the amendments that excluded an actual shooter from relief.[4]

Finally, defendant argued the transferred intent instructions permitted the jury to convict him based on an imputed malice theory that was eliminated by the amendments to sections 188 and 189.

**<u>The Trial Court's Ruling</u>**

On March 28, 2023, the court held the hearing on the prima facie issue and stated it had read the parties' briefs. The court stated that while defendant argued he was convicted based on imputed malice, the record showed the case involved transferred intent and defendant's own intent to kill. The court invited argument and the parties submitted the matter.

The court denied the petition:

> "This is a situation, I believe, where the record of conviction establishes as a matter of law that this is an imputed malice case. The jury instructions, which I have reviewed, indicate that the jury was offered a transferred intent theory. In short, the defendant was alleged to have intended to kill person A, but ended up instead killing person B. The jury was told if they thought that defendant had the intent to kill target A, but killed target B, that intent to kill can be transferred and could be convicted on that theory.
>
> "In my view, that is not an imputed malice. In other words, malice from somebody else, imputed to somebody else, it was the defendant's own mind. I think the jury's verdict found that he acted with the malice to kill, the malice required, and still convicted of second degree murder. They were not given any felony murder or natural and probable consequences

---

[4] Defendant's claim that an actual shooter could qualify for resentencing under section 1172.6 was legally erroneous. "A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that … the petitioner was the actual killer .…" (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

theory or any other imputed malice theory that led them to second degree murder.

"He was also—the jury also found true that he personally used a weapon during the commission of the murder."

Defendant filed a timely notice of appeal.

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*. The brief included counsel's declaration that defendant was advised he could file his own brief with this court. This court also advised defendant that he could file a supplemental letter brief, and the appeal would be dismissed pursuant to *Delgadillo* if he failed to do so within 30 days.

In response to this court's order, defendant filed a supplemental brief and raises issues regarding his trial and conviction, and the trial court's denial of his petition for resentencing.

## I. Defendant's Arguments About His Trial and Conviction

Defendant argues he was improperly convicted of murder because the evidence showed that he acted in self-defense, the prosecution improperly introduced certain photographic exhibits, the weapon was never recovered, and there is allegedly "new" evidence regarding money possessed by the rent collector.

Defendant's claims based on his jury trial and conviction are not cognizable in this appeal. "The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding.… The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.' " (*People v.*

9

*Farfan* (2021) 71 Cal.App.5th 942, 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

## II.  Defendant's Arguments About His Petition

Defendant argues his petition should have been granted because he was convicted based on an imputed malice theory.  Defendant acknowledges the jury was instructed on transferred intent, but asserts the instructions allowed the jury to convict him by relying on felony murder based on his commission of an attempted murder, and not on his own malice aforethought since he did not intend to kill anyone.

## A.  Transferred Intent

"When intent to kill is at issue in murder, it may be proven through the doctrine of transferred intent."  (*People v. Vasquez* (2016) 246 Cal.App.4th 1019, 1025 (*Vasquez*).)  Transferred intent instructions in murder prosecutions "present the classic 'bad aim' cases in which a defendant who attempts to kill one individual and inadvertently kills a bystander instead is convicted of murder on the theory of transferred intent.  Courts in these cases have uniformly rejected the defendants' argument that their convictions were based on insufficient evidence of intent to kill."  (*People v. Scott* (1996) 14 Cal.4th 544, 550.)

"Under the 'classic formulation' of the transferred intent doctrine, where a defendant intends to kill a victim but misses and instead kills a bystander, the intent to kill the intended victim is imputed to the resulting death of the bystander and the defendant is liable for murder.  [Citations.]  However, under the transferred intent doctrine, the defendant's intent is not actually transferred from the intended victim to the unintended victim.  'Rather, as applied here, [the transferred intent doctrine] connotes a *policy*—that a defendant who shoots at an intended victim with intent to kill but misses and hits a bystander instead should be subject to the same criminal liability that would have been imposed had he hit his intended mark.' "  (*People v. Concha* (2009) 47 Cal.4th

653, 664.)  "Intent to kill transfers to an unintended homicide victim even if the intended target is killed."  (*People v. Bland* (2002) 28 Cal.4th 313, 326 (*Bland*).)

Thus, to be convicted of murder under a transferred intent theory, the defendant must possess actual malice.  The transferred intent theory, however, cannot be applied to support attempted murder convictions.  (*People v. Perez* (2010) 50 Cal.4th 222, 232; *Bland*, *supra*, 28 Cal.4th at pp. 327–328.)

In contrast, under the imputed malice theories eliminated by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), a defendant could be convicted of murder without actual malice.  Under the former felony-murder rule, a person could be convicted of murder if the person was a participant in the perpetration or attempted perpetration of specified felonies in which a death occurred, whether or not that person harbored actual malice.  (*People v. Chun* (2009) 45 Cal.4th 1172, 1182.)  Similarly, under the former natural and probable consequences doctrine, an aider and abettor could be "found guilty not only of the intended crime (the target offense) but also of any other crime the perpetrator actually commits (the nontarget offense) that is a natural and probable consequence of the intended crime."  (*Vasquez*, *supra*, 246 Cal.App.4th at p. 1025.)

In addition, there is a distinction "between a completed murder and attempted murder regarding transferred intent.  Someone who in truth does not intend to kill a person is not guilty of that person's attempted murder even if the crime would have been murder—due to transferred intent—if the person were killed.  To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else.  The defendant's mental state must be examined as to each alleged attempted murder victim."  (*Bland*, *supra*, 28 Cal.4th at p 328.)

11

**B. Analysis**

In this case, the jury was not instructed on the natural and probable consequences doctrine, the felony-murder rule, or attempted murder as an underlying offense to felony murder. Instead, the jury was correctly instructed on second degree murder committed without premeditation, express and implied malice, and transferred intent. The imputed malice theories eliminated by Senate Bill No. 1437 are not implicated by the doctrine of transferred intent because "the intent required for the crime at issue [murder] was already established with respect to [the intended victim] and was transferred to the ultimate victim." (*Vasquez*, *supra*, 246 Cal.App.4th at p. 1026.) If the jury relied on the transferred intent doctrine, defendant's conviction was not based on either imputed malice or the felony-murder rule, and defendant's section 1172.6 petition for resentencing was correctly denied.

**III. Youthful Offender Arguments**

Finally, defendant argues that when he filed his section 1172.6 petition, he "mentioned" to his appointed counsel "to consider" that he was a "youthful offender" because he was 19 years old when he committed the crime, and the trial court should have granted his petition on that basis. Defendant did not file a separate petition regarding his alleged youthful offender status.

Several appellate courts have addressed the relevance of a defendant's youth in section 1172.6 proceedings, when the petition is based on felony murder and an analysis of major participant and reckless indifference findings under *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. (See, e.g., *People v. Harris* (2021) 60 Cal.App.5th 939, 960, abrogated on other grounds by *People v. Lewis*, *supra*, 11 Cal.5th 952; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 987; *People v. Keel* (2022) 84 Cal.App.5th 546, 562; *People v. Jones* (2022) 86 Cal.App.5th 1076, 1091–

12

1093; *People v. Oliver* (2023) 90 Cal.App.5th 466, 489–490; *People v. Pittman* (2023) 96 Cal.App.5th 400, 417.)

In this case, however, the jury was not instructed on the felony-murder rule. The trial court correctly denied defendant's petition because he was convicted based on his own intent to kill under the transferred intent doctrine, it did not rely on the *Banks/Clark* factors, and the youthful offender factors were not relevant or implicated by his petition.

## DISPOSITION

The trial court's order of March 28, 2023, denying defendant's petition for resentencing, is affirmed.